UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RESTAURANT SUPPLY, LLC
    Plaintiff,

v.

PRIDE MARKETING AND PROCUREMENT, INC.
    Defendant.

No. 3-16-cv-1270 (MPS)

## MEMORANDUM OF DECISION

**I. INTRODUCTION**

On June 28, 2016, Plaintiff Restaurant Supply, LLC ("Restaurant Supply") brought this action in Connecticut Superior Court against Defendant PRIDE Marketing and Procurement, Inc., and, on July 27, 2016, PRIDE removed the case to this Court. (ECF No. 1.) On August 17, 2016, Restaurant Supply filed an amended complaint. (ECF No. 17.) The amended complaint seeks an equitable accounting from PRIDE and contends that PRIDE is liable for conversion, civil theft, and unjust enrichment due to PRIDE's wrongful withholding of rebates. (*Id.* at ¶¶ 26–28.) PRIDE moved to dismiss Restaurant Supply's amended complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or alternatively, to transfer venue under 28 U.S.C. § 1404(a). (ECF No. 18.)

For the reasons set forth below, the Court GRANTS Defendant's motion to transfer this action to the United States District Court for the Eastern District of Louisiana and DENIES the Rule 12(b)(2) motion as moot.

## II.     BACKGROUND

The complaint states that PRIDE is a Louisiana Corporation with a principal place of business in Metairie, Louisiana (ECF No. 17 at ¶ 2.) PRIDE is a "consortium/buying group made up of separate shareholders engaged in the business of buying and selling food service supplies and equipment products[.]" (*Id.* at ¶ 4.) "Each shareholder admitted into P[RIDE] received one share of the corporation, which entitled each shareholder to purchase [p]roduct[s] through P[RIDE.]" (*Id.* at ¶4.) Under PRIDE's shareholder agreement, "P[RIDE] received certain rebates from P[RIDE] vendors directly related to the specific purchase of [p]roduct[s] that [shareholders] made through P[RIDE]. P[RIDE] held these rebates as the agent for [shareholders]." (*Id.* at ¶ 8.)[1]

Restaurant Supply alleges that it is a Connecticut limited liability company with a principal place of business in Hartford, Connecticut, and that it was a shareholder of PRIDE for at least ten years prior to May 20, 2016. (ECF No. 17 at ¶3.) PRIDE received rebates from vendors directly related to the specific purchases of products that Restaurant Supply made through PRIDE. (*Id.* at ¶ 8.) PRIDE was required "to remit the vendor rebates received by P[RIDE] to Restaurant Supply subject to P[RIDE]'s right of setoff against any indebtedness owed to P[RIDE] by Restaurant Supply for any [p]roduct Restaurant Supply purchased through P[RIDE]." (*Id.* at ¶ 9.)

---

[1] The shareholder agreement states:

> The Vendor Rebates paid by a PRIDE Vendor to PRIDE for Product Purchases shall be an obligation due and owing by PRIDE, and therefore will be paid to the Shareholder for which the product was purchased and subsequently sold to, in accordance with the procedures established and implemented by the PRIDE Board of Directors from time to time, subject to any hold or suspension of payment which may be effected by PRIDE for any outstanding Authorization Code Purchases for which a balance remains outstanding or the exercise of the right of set off by PRIDE to satisfy any indebtedness which may be owed to PRIDE by the Shareholder, all as set forth in Sections 3.02 and 8.03 above.

(ECF No. 18-2 at 12.)

The complaint alleges that PRIDE improperly withheld these rebates for more than a year. "[F]or calendar year 2015 through the first quarter of 2016, P[RIDE] owed to Restaurant Supply more than $2,000,000 in vendor rebates, even after applying P[RIDE]'s right to setoff for any indebtedness allegedly due to P[RIDE] from Restaurant Supply for any vendor purchases . . . that were guaranteed by P[RIDE]." (*Id.* at ¶ 10.) Restaurant Supply demanded payment of these outstanding rebates, but PRIDE did not pay them. (*Id.* at ¶ 11.) After that, on May 20, 2016 at 5:30 p.m. CST, PRIDE's board of directors voted to terminate Restaurant Supply as a shareholder. (*Id.* at ¶ 12.)

The complaint alleges that PRIDE kept detailed accountings of the purchases Restaurant Supply made through PRIDE. (ECF No. 17 at ¶ 13.) Further, the complaint details that PRIDE made a substantial payment to a related entity's vendors to honor PRIDE's commitments to them and also pledged shareholder funds and rebates as collateral for its guarantee of that same related entity's bank debt. (*Id.* at ¶¶17–24.) The related entity filed for Chapter 11 Bankruptcy in the Eastern District of Louisiana the same day that the Board of Directors of PRIDE terminated Restaurant Supply as a shareholder. (*Id.* at ¶ 25.)

## III. DISCUSSION

Although PRIDE has moved to dismiss the Amended Complaint for lack of personal jurisdiction and only moved to transfer in the alternative, the Court is permitted to consider venue before personal jurisdiction. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Open Solutions Imaging Sys., Inc. v. Horn*, 3:03-cv-2077, 2004 WL 1683158, *7 n.12 (D. Conn. July 27, 2004) (citing *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111–12 (2d Cir. 2001)). The Court will do so.

Defendant seeks to transfer this case to the Eastern District of Louisiana under 28 U.S.C. § 1404(a). That statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). While the Court does not find that the forum selection clause in the Shareholder Agreement is mandatory, the factors that courts typically consider when making a § 1404(a) decision weigh in favor of transfer. As such, the Court GRANTS the motion to transfer and DENIES as moot the motion to dismiss. (ECF No. 18.)

### A. Forum Selection Clause

PRIDE argues that the Shareholder Agreement's forum selection clause conclusively determines that the parties are required to file any related suits in Louisiana. The forum selection clause states as follows: "The parties consent that Louisiana shall be a forum where any cause of action arising under [the Shareholder] Agreement may be instituted." (ECF No. 18-2 at 13.)

To determine the enforceability of a forum selection clause the Court employs a four-part analysis:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. . . . If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. . . . A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips v. Audio Active*, Ltd., 494 F.3d 378, 383 (2d Cir. 2007)) (emphasis in original) (internal quotation marks and citations omitted). The second factor is at issue here. Restaurant Supply contends that the language

in the forum selection clause is permissive rather than mandatory. (ECF No. 25 at 15–18.) Because the Shareholder Agreement is governed by Louisiana law, Louisiana law applies to interpretation of the forum selection clause. *Phillips*, 494 F.3d at 384–85. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties." *Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 75; La. Civ. Code art. 2046.

Here, the plain language of the clause shows that the forum selection clause is permissive. The forum selection clause in the Shareholders' Agreement states that "the parties consent that Louisiana shall be *a* forum where any cause of action arising under this Agreement *may* be instituted." (ECF No. 18-2 at 13) (emphasis added.) Because the parties used "may" and "a," this clause clearly states that it is permissive, and the Court will not look past the plain meaning of this language.

**B. § 1404(a) Analysis**

In the absence of a mandatory forum-selection clause, a district court considering a § 1404(a) motion must first address the threshold question of whether the action could have been brought originally in the district to which the movant seeks to transfer the case. 28 U.S.C. § 1404(a). It is undisputed that this action could have been brought in the Eastern District of Louisiana. (ECF Nos. 18-2 at 13, 25 at 18).

Next, the Court must determine whether the transfer promotes the convenience of the parties and the interest of justice. The movant has the burden of making "a clear and convincing showing" of the desirability of transfer. *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir. 1950)). The Court has broad discretion to make such a determination, and may consider factors such as:

5

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006). Courts also consider two additional factors: (8) "the forum's familiarity with the governing law"; and (9) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006). "There is no rigid formula for balancing these factors and no single one of them is determinative in what is essentially an equitable task left to the Court's discretion." *Two's Co. v. Hudson*, No. 13-CV-3338-NSR, 2014 WL 903035, at *8 (S.D.N.Y. Mar. 6, 2014) (internal quotation marks and citations omitted).

In this case, the only factor weighing in favor of retaining the action in this Court is the plaintiff's choice of forum, while four factors weigh in favor of transferring the action: (1) the location of sources of proof; (2) the locus of operative facts; (3) the forum's familiarity with the governing law; and (4) the interest of justice. Therefore, I GRANT the motion to transfer to the Eastern District of Louisiana.

    1. <u>Locus of Operative Facts</u>

"The locus of operative facts is a primary factor in determining whether to transfer venue." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 AJN, 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) (internal quotation marks and citations omitted). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003) (internal quotation marks and citations omitted).

Louisiana is the location of the operative facts. The cause of action arises under the Shareholder Agreement, and the agreement states:

> [t]his Agreement takes effect upon its acceptance and execution by PRIDE, which shall be deemed to take place in the State of Louisiana, and any and all performances hereunder or breaches hereof shall be interpreted, governed, and construed in accordance with and under the laws of the State of Louisiana, which laws shall prevail in the event of any conflict of law."

(ECF No. 18-2 at 13.) Thus, the parties stipulated in the Shareholders Agreement that "acceptance and execution" of the Agreement took place in Louisiana and "all performances hereunder" are to be governed by Louisiana law. (*Id.*) Further, Restaurant Supply claims that PRIDE received rebates from vendors, based on shareholder purchases, and then improperly retained those rebates—actions that would have occurred at PRIDE's place of business in Louisiana. (ECF No. 17 at ¶¶ 8–10.) Restaurant Supply also alleges that, after it demanded payment of the unpaid rebates, PRIDE's Board of Directors "voted to terminate and remove Restaurant Supply as a shareholder of P[RIDE], effective May 20, 2016, at 5:30 p.m. Central Standard Time." (*Id.* at ¶ 12.) Those events would also would have occurred in Louisiana. (*Id.* at ¶ 2.) Also, PRIDE's alleged giving of its shareholders' rebates as collateral for its guarantee of the debt of a related entity occurred in Louisiana, and the complaint alleges that the bankruptcy of the related entity, in which rebates allegedly withheld by PRIDE may be an asset of the debtor's estate, was filed in Louisiana. (*Id.* at ¶¶ 15–25.) Restaurant Supply did "initiate[] hundreds of purchases through P[RIDE] by way of orders initiated in the State of Connecticut" and did receive the purchased products in Connecticut. (*Id.* at ¶ 7.) But PRIDE's allegedly improper withholding of Restaurant Supply's rebates—not Restaurant Supply's purchases—forms the basis for this action. Therefore, I find that Louisiana is the location of operative facts.

2. Plaintiffs' choice of forum

"[A] plaintiff's choice of forum is given great weight." *Jones*, 463 F. Supp. at 274 (internal quotation marks and citations omitted). "That presumption is even stronger where the chosen forum is also the plaintiff's home." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). "A plaintiff's choice of forum receives less deference, however, when the locus of operative facts is elsewhere." *Open Solutions Inc. v. Granite Credit Union*, No. 3:12-CV-1353 RNC, 2013 WL 5435105, at *4 (D. Conn. Sept. 29, 2013).

Here, the Plaintiff's only place of business is in Connecticut, and it chose the District of Connecticut as the forum. But because the Court has found that the locus of operative facts is in Louisiana, the Plaintiff's choice of the District of Connecticut is given less weight.

3. <u>Convenience of Witnesses</u>

"In most cases, the convenience of the party and non-party witnesses is the most important factor in the analysis under § 1404(a)." *Barge v. Daily Journal Corp.*, No. 95 CIV. 8135 (MBM), 1996 WL 434561, at *3 (S.D.N.Y. Aug. 2, 1996) (internal quotation marks and citations omitted). The moving party "must provide the Court with a specific list of the probable witnesses who will be inconvenienced if required to testify in the present forum" (*McGraw-Hill Companies Inc.*, 2014 WL 988607, at *7), and "make a general statement of what their testimony will cover." *Charter Oak Fire Ins. Co.,* 294 F. Supp. at 220. "The Court is to assess not just the number of witnesses, but also the materiality of their proposed testimony." *McGraw-Hill Companies Inc.,* 2014 WL 988607, at *7. If the moving party does not provide a list of witnesses, "the Court cannot effectively weigh the convenience of witnesses in the analysis." *Soto v. Bey Transp. Co.*, No. 95-cv-9329(PKL), 1997 WL 407247, at *3 (S.D.N.Y. 1997).

In this case, the movant, PRIDE, did not provide the Court with a specific list of probable witnesses, so the Court cannot weigh this factor effectively. PRIDE merely states that "[m]ost of

the likely witnesses, including former officers of PRIDE, reside in Louisiana," and that "all of PRIDE's officers and employees with knowledge of the facts underlying the plaintiff's claims are located in Louisiana [.]" (ECF No. 29 at 8.) This fails to make an adequate showing for this factor, and the Court cannot weigh it in PRIDE's favor.

4. Convenience of the Parties

Defendant argues that the convenience of the parties weighs in favor of transfer because Defendant is located in Louisiana and because Plaintiff is currently a named party in the related entity's bankruptcy proceeding in Louisiana. (*Id.* at 8–9.) While this could show that Restaurant Supply is capable of litigating in Louisiana, this does not make Louisiana a more convenient forum. The associated case cannot be consolidated with this one, because it is in bankruptcy court. Restaurant Supply did not choose the Louisiana forum, and it is located in Connecticut. Since either the plaintiff or the defendant will be inconvenienced by having to travel, this factor is neutral. "No matter where this action is to be heard, should it proceed to trial, either the plaintiff or the defendant will be inconvenienced by having to travel a substantial distance." *Designs By Glory, Ltd. v. Manhattan Creative Jewelers, Inc.*, 657 F. Supp. 1257, 1259 (S.D.N.Y. 1987); *see also Audiovox Corp. v. S. China Enter., Inc.*, No. 11-cv-5142 JS GRB, 2012 WL 3061518, at *7 (E.D.N.Y. July 26, 2012).

5. Location of Documents and Ease of Access to Sources of Proof

The location of documents weighs slightly in favor of transfer. *See In re Stillwater Min. Co. Sec. Litig.*, 2-cv-2806, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) ("While it is true that documents can be transported from state to state, for purposes of weighing transfer factors, the fact that the documents are all currently located in Montana favors transfer."). "Although the location of relevant documents is entitled to some weight, modern photocopying technology and

electronic storage deprive this issue of practical or legal weight." *Charter Oak Fire Ins. Co.*, 294 F. Supp. at 221 To the extent it does affect the analysis, most of the material documents in this case will likely consist of business records—PRIDE's financial statements and invoices and the accountings it has kept of Restaurant Supply's purchases and rebates (ECF No. 17 at ¶¶ 13–14)—all or most of which presumably are in Louisiana. (ECF No. 29 at 8.)

6. Availability of Process to Compel Unwilling Non-Party Witnesses

Because neither party argues that it will need to compel non-party witnesses, this factor is neutral.

7. Relative Means of the Parties

Plaintiff makes "no showing of financial hardship that would prevent [them] from fully litigating this case" in the Eastern District of Louisiana. *See Ring v. Executive Jet Aviation, Inc.*, No. 01 CIV. 738 (DLC), 2001 WL 492428, at *3 (S.D.N.Y. May 8, 2001). Furthermore, even if the Court were to deny the motion to transfer and the case were to proceed in Connecticut, Plaintiff would still likely have to travel to Louisiana to depose PRIDE's officers and employees with knowledge of the facts underlying Restaurant Supply's allegations. As such, this factor is neutral.

8. Familiarity with Governing Law

As noted, the Shareholder Agreement contains a choice-of-law clause designating Louisiana. "[F]ederal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d 130, 132 (D. Conn. 1998). However, because "[d]istrict courts are presumed to be more familiar with the law of the state in which they sit," this factor favors transfer. *Costello v. Home Depot U.S.A.*, Inc., 888 F. Supp. 2d 258, 269 (D. Conn. 2012).

9. Trial Efficiency and the Interest of Justice

Trial efficiency and the interest of justice are served by a forum in which the parties do not raise a complicated issue of jurisdiction. "Transfer is favored to remove procedural obstacles including the lack of personal jurisdiction." *WorldCare Ltd. Cor. v. World Ins. Co.*, 767 F. Supp. 2d 341, 365 (D. Conn. 2011). "If the issue of whether the transferor court has personal jurisdiction over the defendant is a difficult one, transfer to a district where jurisdiction is certain may be in the interest of justice because it may conserve judicial resources." *The Katiroll Co. v. Kati Roll & Platters, Inc.*, No. 10-cv-1703 LTS RLE, 2010 WL 2911621, at *5 (S.D.N.Y. July 9, 2010). And transfer may thus "prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citations omitted).

The law of the forum state governs personal jurisdiction in diversity suits such as this one. In Connecticut, first, the defendant's conduct must satisfy the requirements of the long-arm statute, and, second, jurisdiction must comport with the Fourteenth Amendment's Due Process clause. *Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 22–23 (D. Conn. 1994) (internal citations omitted). The Connecticut long-arm statute applicable to foreign corporations is Conn. Gen. Stat. § 33-929.

On balance, the Court finds that transferring this case to the Eastern District of Louisiana would advance the administration of justice as a § 1404(a) factor. The parties dispute whether the District of Connecticut has personal jurisdiction over PRIDE under the long-arm statute and under the minimum contacts analysis required for due process. (ECF Nos. 18-1 at 5–9, 25 at 6–14.) While the Court has not decided the Rule 12(b)(2) motion to dismiss, it has reviewed the papers, and it notes that—while there are non-frivolous arguments in support of jurisdiction—the Court has serious questions about whether it has personal jurisdiction over PRIDE. To be sure, Restaurant

Supply has alleged that it "initiated hundreds of purchases through P[RIDE] by way of orders initiated in the State of Connecticut and Restaurant Supply often received [p]roduct[s] from the P[RIDE] purchases in the State of Connecticut." (ECF No. 17 at ¶ 7.) However, as noted, the conduct that forms the basis for the complaint—that is, PRIDE's terminating Restaurant Supply as a shareholder, declining to pay Restaurant Supply its rebates, pledging shareholder funds and rebates as collateral for a guarantee of the related entity's debt, and making substantial payments to the related entity's vendors and lender—took place in Louisiana. (*Id.* at ¶¶ 11–25.) These contentions result in a complicated jurisdictional analysis. Because there is no doubt that there would be personal jurisdiction in Louisiana, this factor weighs in favor of transfer.

As such, the § 1404(a) factors weigh in favor of transfer if there is personal jurisdiction over the defendant in Connecticut, but would also be proper if not. 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Under that provision, district courts may transfer venue even when they lack personal jurisdiction over the defendant. *See Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001); *see also Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 515 n. 2 (D. Conn. 2011). Venue is proper in any district where there is personal jurisdiction over the defendant. 28 U.S.C. § 1391(b). Therefore, even if the Court were to find that it lacks personal jurisdiction over the defendant, transfer to the Eastern District of Louisiana still would be appropriate under § 1406(a).

IV. **CONCLUSION**

Based on my assessment of the totality of the material circumstances, I find that transfer of this case to the Eastern District of Louisiana is warranted. I therefore GRANT Defendant's

motion to transfer venue to the Eastern District of Louisiana and DENY the Defendant's alternative motion to dismiss as moot. The Clerk of the Court is directed to transfer this case to the United States District Court for the Eastern District of Louisiana.

                                        IT IS SO ORDERED.

                                        /s/
                                        Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                August 10, 2017